CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
6/19/2018
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| KATHLEEN A. FAWLEY, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:17-cv-00044 |
| LAYMAN, DIENER, & BORNTRAGER INSURANCE AGENCY, INC., | ) By: Elizabeth K. Dillon <br> ) United States District Judge |
| Defendant. | ) |

**MEMORANDUM OPINION**

In this action, plaintiff Kathleen Fawley (formerly Kathleen Wilkins) has asserted two claims against her employer, Layman, Diener, & Bontrager Insurance Agency, Inc. (LD&B), under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e (Title VII). Count I alleges discrimination by LD&B against Kathleen Fawley on the basis of sex and/or pregnancy. Count II alleges that LD&B retaliated against her after she engaged in protected activity.

LD&B now moves to dismiss Fawley's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. LD&B claims that she has not sufficiently alleged an adverse employment action for the discrimination claim or a materially adverse action under the retaliation claim. The motion has been fully briefed and was argued. For the reasons set forth below, the motion to dismiss will be granted in part and denied in part.

I. BACKGROUND

**A. Fawley is hired and becomes pregnant.**

The facts below are based on Kathleen Fawley's complaint, which the court accepts as true for purposes of the motion to dismiss. Fawley was hired by LD&B on September 19, 2011, as an account manager working in the Broadway office. The Broadway office was staffed by Fawley and Charity Jones, who held the title of "Branch Coordinator" but did not directly supervise Fawley. Around May 2016, Fawley learned that she was pregnant. Fawley informed LD&B of her pregnancy after she had begun showing. Specifically, around July 12, 2016, Fawley claims that she told Charity Jones that she was pregnant and Jones subsequently became hostile toward her and her pregnancy. (Compl. ¶¶ 7, 15–18, Dkt. No. 1.)

On July 13, 2016, Denise Click, the personal lines division manager in Harrisonburg and a friend of Jones, e-mailed Fawley to advise her that she would be getting a cost of living increase for the coming year. Fawley asked Click who she could contact about getting a raise over and above the cost of living increase. Click directed plaintiff to the CEO, Stephen Cavanaugh. Click also said she would follow up with Fawley's annual review. Shortly afterward, Click spoke with Jones. Two days later, Click told Fawley that Cavanaugh would be present for her performance review. (Compl. ¶ 19.)

**B. Fawley is given a negative performance evaluation and placed on an improvement plan.**

According to Fawley, her performance review on July 20, 2016, included "false and defamatory statements about her performance" and she was given an "unjustified" improvement plan. Fawley was accused of selling cosmetics while at work and using her phone for personal reasons. She was placed on a 60-day improvement plan which limited her ability to

communicate with customers, co-workers, and others. She also claims that she objected to the "false statements, evaluation, and the improvement plan." (Compl. ¶¶ 20–23.)

Fawley contends that she performed all that was asked of her in the improvement plan. Despite this, Click and the Human Resources representative, Barbara Chandler, gave her a "Written Warning-Last and Final Notice" (Final Notice) on August 29, 2016. The Final Notice required Fawley to work from the main office in Harrisonburg in order to be supervised directly by Click. The change in office location increased Fawley's commute by 20 to 25 minutes each way, making it more expensive and difficult to get to work on time. Fawley notes that this extra commute time was particularly difficult because she had to put her school-age children on the bus in Broadway before commuting to Harrisonburg. Moreover, Fawley claims that in the past, employees were moved to the Harrisonburg office just before their employment was terminated. Additionally, the Final Notice said that she was on a minimum of 60 days of probation and that her job performance would be closely monitored. (Compl. ¶¶ 23–28, 39.)

Fawley alleges that the Final Notice was discriminatory and part of LD&B's plan to set her up for termination because of her sex and/or pregnancy. Fawley filed her Charge of Discrimination (the Charge) on September 12, 2016, and a copy of the Charge was provided to Cavanaugh that day. (Compl. ¶ 31.)

**C. LD&B allegedly retaliates against Fawley after she files an EEOC charge.**

Fawley alleges that within about two weeks of filing the Charge, Click accused her of not reporting back to work in the afternoon after an out-of-town training. Fawley claims that a male employee in the same training also went home and that the established practice for such trainings was for employees to end their days after the training. (Compl. ¶ 32.)

Then, in late October of 2016, LD&B advertised for applicants to fill Fawley's former position in the Broadway office. After advertising for applicants, LD&B subsequently placed a female employee with alleged disciplinary problems in the Broadway office, officially replacing Fawley. Fawley states that LD&B did not provide her with a reason for not returning her to the Broadway location after she passed the 60-day probationary period that was announced on August 29, 2016. She does not allege, however, that she applied for that position or asked to be returned to the Broadway office. (Compl. ¶¶ 35–36.)

Fawley claims that the performance improvement plan, Final Notice, and transfer from the Broadway office to the Harrisonburg office were all discriminatory actions by LD&B against her based on her sex and pregnancy, and/or retaliation for her objections to LD&B's conduct. Fawley also claims that LD&B's failure to return her to the Broadway office and filling her position there "was further discrimination and/or retaliation for opposing conduct that violated Title VII, and retaliation for her participation in processes designed to end such discrimination, including her EEOC Charge." As of the date of the hearing, though, Fawley remained employed by LD&B, working in the Harrisonburg office. (Compl. ¶¶ 41–42.)

## II. DISCUSSION

**A. Standard of Review for a Motion to Dismiss Pursuant to Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a plaintiff's complaint to determine whether it has properly stated a claim. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**B. Count I: Discrimination on the Basis of Sex/Pregnancy in Violation of Title VII**

Title VII prohibits an employer from discriminating against an employee on the basis of sex and/or pregnancy. It is undisputed that LD&B is an "employer" and Fawley is an "employee" within the meaning of, and subject to, Title VII. 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). A plaintiff alleging disparate treatment on the basis of sex or pregnancy must show that: (1) she belongs to the protected class; (2) she was performing her job in a satisfactory manner; (3) she suffered adverse action; and (4) other similarly situated employees did not suffer similar action. *Young v. United Parcel Serv., Inc.*, 135 S. Ct. 1338, 1345 (2015); *see also DeJarnette v. Corning Inc.*, 133 F.3d 293, 297 (4th Cir. 1998) (noting that a pregnancy discrimination claim is analyzed in the same manner as a Title VII discrimination claim).

LD&B moves to dismiss Fawley's discrimination claim, contending that Fawley has not satisfied the requirements of the claim because she has not adequately demonstrated that she suffered an adverse employment action. "An adverse employment action is one that causes a

'significant detrimental effect.'" *Ferguson v. Holder*, No. 1:14-cv-1641, 2015 WL 11117148, at *5 (E.D. Va. Feb. 9, 2015), *aff'd sub nom. Ferguson v. Lynch*, F. App'x 206 (4th Cir. 2015) (*quoting Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007)). Thus, it is an action that "adversely affects the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (*quoting Von Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001)).

Fawley contends that she has suffered four adverse actions on the basis of her sex or pregnancy: (1) a negative performance evaluation and her placement on a 60-day performance improvement plan; (2) the issuance of the Final Notice letter to her, threatening her with termination if her performance did not improve; (3) her relocation to a different office, which is further away from her home and which she contends is an office where employees are routinely transferred before they are terminated; and (4) her supervisor's questioning regarding her not returning to work after a training session, although this did not result in any disciplinary action against her. Fawley also refers to LD&B's failure to return her to the Broadway office, although this does not seem to be distinct from the transfer/relocation itself.

LD&B contends that none of these are "adverse actions" sufficient to support a Title VII claim. It further notes that Fawley has not been terminated, demoted, or suffered a loss in pay. Therefore, LD&B argues, she has failed to plead sufficient facts to show any adverse employment actions to support the third element of her discrimination claim. (Def.'s Reply Br. Supp. Mot. to Dismiss 5, Dkt. No. 17.)

As to the first three actions alleged by Fawley—the evaluation, the performance improvement plan, and the Final Notice—the court concludes that they are insufficient to constitute an adverse employment action. A negative evaluation and improvement plan, without

6

collateral consequences, do not satisfy the element of adversely affecting the terms, conditions, or benefits of one's employment. *See generally Jones v. Constellation Energy Projects & Servs. Grp., Inc.*, 629 F. App'x 466, 468 (4th Cir. 2015) (noting that a performance review and placement on a performance improvement plan were not adverse actions); *Blount v. Dep't of Health & Human Servs.*, 400 F. Supp. 2d 838, 842 (D. Md. 2004) (determining that disparaging comments and criticism made by a supervisor do not constitute adverse employment actions). The Final Notice is arguably different from a one-time reprimand, but as LD&B notes, Fawley remains employed in Harrisonburg to this date, now more than a year later. (Def.'s Br. Supp. Mot. to Dismiss 4, Dkt. No. 6.) She simply has not alleged collateral consequences from any of these three actions. *See Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 820 (E.D. Va. 2016) (explaining that a reprimand is not an adverse employment action for purposes of a retaliation claim unless the plaintiff also pleads that the reprimand will subject plaintiff to adverse employment actions in the future); *Koenig v. McHugh*, No. 3:11-cv-60, 2012 WL 1021849, at *5 (W.D. Va. Mar. 26, 2012) (stating that a reprimand is not an adverse employment action if it does not have collateral consequences such as leading to termination, demotion, or decrease in pay).

Fawley's transfer from the Broadway office to the Harrisonburg office, however, is plausibly an adverse employment action. On the one hand, there are courts that have held that a relocation within a relatively compact geographic region that did not affect duties, pay, or benefits does not count as an adverse employment action under a Title VII discrimination claim. *See, e.g., Norloff v. Virginia*, 51 F. Supp. 2d 699, 702 (E.D. Va. 1998). On the other, courts have held that a significant increase in commute time, from 30 minutes to 3 hours, was a sufficient

7

adverse action to support a discrimination claim. *Supinger v. Virginia*, 167 F. Supp. 3d 795, 807 (W.D. Va. 2016).

Further, the relocation effectively acted as a schedule change for Fawley, who has young children, and thus could plausibly constitute an adverse action. "A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). The Final Notice required Fawley to arrive at Harrisonburg by 8:00 a.m. and increased her commute time by 20 to 25 minutes in each direction. Fawley claims that this has made it much more difficult for her to put her school-age children on the bus in Broadway and arrive to work on time. (Compl. ¶ 28.) She therefore contends that the transfer did affect the terms and conditions of her employment and can support a discrimination claim.

At this stage of the case, the court believes that it is at least plausible that the relocation to the Harrisonburg office, effectively changing Fawley's schedule, could constitute an adverse employment action. Thus, the court will allow this portion of her discrimination claim to go forward, and the motion to dismiss the discrimination claim will be denied.

**C. Count II: Unlawful Retaliation in Violation of Title VII**

Title VII also prohibits employer retaliation against an employee because he or she has engaged in protected activity. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013). A Title VII retaliation claim has three elements that must be established: "(1) that the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action." *Munday v. Waste Mgmt. of N. Am.*, 126 F.3d 239, 242 (4th Cir. 1997) (citation omitted).

The first issue here is whether Fawley engaged in protected activity prior to any alleged

retaliation. An employee has engaged in protected activity if that employee "has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3. In evaluating a retaliation claim, moreover, the timing is often critical because there must be a causal link between the protected activity and the materially adverse action against the employee. That is, a materially adverse action taken before any protected activity cannot be retaliatory. *See generally Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 69; *Hinton v. Virginia Union Univ.*, 185 F. Supp. 3d 807, 825 (E.D. Va. 2016); *Jarvis v. Enterprise Fleet Servs. & Leasing Co.*, No. DKC-07-3385, 2010 WL 1068146, at *16 (D. Md. Mar. 17, 2010).

Fawley claims that she engaged in protected activity by complaining about her evaluation and improvement plan. (Pl.'s Opp'n to Mot. to Dismiss 14, Dkt. No. 11.) LD&B counters that Fawley's complaints as to her evaluation and improvement plan do not constitute protected activity because she never tied her complaints to any claim of discrimination based on sex or pregnancy. In order to be protected activity, the complaints must be directed to an unlawful employment practice, not just a general complaint that an employment action was unfair or unwarranted. *Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 588 (D. Md. 2012) (noting that "Title VII does not protect general complaints of unfair treatment"; instead, a complaint is "protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct") (citations omitted): *see also DeMasters v. Carillion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015) (explaining that protected activity is oppositional conduct directed to an "unlawful employment practice" and "encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in

9

order *to bring attention to an employer's discriminatory activities*") (emphasis added) (quoting *Laughlin v. Metro Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998)). Importantly, Fawley's pleading does not allege that she told anyone at LD&B that she believed the evaluation or "false statements" were the result of her pregnancy or the result of discrimination. Thus, those complaints were not protected activity under Title VII. As a result, neither the Final Notice nor the transfer to Harrisonburg can be considered retaliatory because Fawley had not yet engaged in protected activity when they were imposed.[1]

It is undisputed, however, that Fawley did engage in protected activity on September 12, 2016, when she filed her Charge of Discrimination. The only allegedly adverse action that occurred after this protected activity, however, was Click's questioning of Fawley's failure to return to work after an afternoon training. The court agrees with LD&B that this does not constitute a materially adverse action that could support a retaliation claim.

For an action to be sufficiently materially adverse to support a retaliation claim, a plaintiff must "show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry.*, 548 U.S. at 68 (internal quotation marks omitted). The Supreme Court has made clear that "[t]he scope of the antiretatliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," but "trivial harms," "petty slights," and "minor annoyances" will not

---

[1] Fawley's reliance on *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015), is misplaced. There, the plaintiff worked as an employee assistance program consultant, and the court was addressing whether he had merely conveyed to human resources a complaint made by another employee or complained himself, thereby engaging in protected activity. In making that determination, the court explained that courts should look to the employee's whole course of conduct in its entirety, not just individual incidents, in assessing whether the plaintiff has engaged in oppositional conduct. The plaintiff in *DeMasters* had clearly made a complaint tied to discrimination, however, and the cases cited therein made clear that an employee's complaint must make some reference to unlawful conduct or discrimination for it to be considered "oppositional conduct."

constitute a materially adverse action. *Id*. at 68. Click's questioning of Fawley fails to constitute a materially adverse action because it would not dissuade a reasonable employee from making or supporting a charge of discrimination.

Fawley also claims that the filling of her Broadway position, which occurred after she filed her EEOC charge, was retaliatory. (Pl.'s Opp'n to Mot. to Dismiss at 14.) Fawley alleges that LD&B has not provided her with any reasons for not returning her to the Broadway location, even though she passed the 60-day probationary period. *Id.* ("As of the filing of the Complaint in this case, although successfully performing the requirements of the discriminatory probationary period, Fawley has not been allowed to return to the Broadway office.") Fawley does not allege, however, that the Final Notice stated that the transfer to the Harrisonburg office was tied to the 60-day probationary period, or that successful completion of the period would result in her return to the Broadway office. Additionally, she does not state that she ever asked to return to the Broadway office. (Compl. ¶¶ 34–40.) Fawley's allegation that she "has not been allowed to return to the Broadway office" is not supported by any facts in her complaint that would show she is plausibly entitled to relief for the failure to transfer her back.

The court will therefore grant LD&B's motion to dismiss Fawley's retaliation claim.

### III.  CONCLUSION

For the foregoing reasons, the court will grant LD&B's motion to dismiss in part and deny it in part. An appropriate order will be entered.

Entered: June 19, 2018.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge